Ronald WEBB and Georgia Webb, his wife, Appellants,

v.

James Michael COMPTON and Brenda Carol Compton, his wife, Gary R. Hughes and Robin Hughes, his wife; Pikeville National Bank; William R. Hughes and Sylvia Hughes, his wife; James Compton and Mable Compton, his wife; Harvey Newsome and Bank One, Appellees.

No. 2001–CA–000592–MR.

Court of Appeals of Kentucky.

May 3, 2002.

Discretionary Review Denied
March 12, 2003.

---

James P. Pruitt, Jr., Pikeville, KY, for appellants.

Will T. Scott, Lawrence R. Webster, Pikeville, KY, for appellees.

Before BUCKINGHAM, GUIDUGLI, and HUDDLESTON, Judges.

## OPINION

BUCKINGHAM, Judge.

Ronald and Georgia Webb appeal from a judgment of the Pike Circuit Court that determined boundary lines between nine lots and that set aside a prior judgment determining those boundary lines. We affirm.

The property is located on the waters of Shelby Creek, a tributary to the Big Sandy River in Pike County, Kentucky. The nine adjacent lots originally constituted the "Polly Ann Compton Farm." In 1965, a partition action was filed in the Pike Circuit Court. That action resulted in the court ordering commissioners to divide the farm into nine lots and to give each child of Polly Ann Compton a portion "embracing one-ninth (1/9th) thereof, according to the quality, quantity and value." A surveyed map (plat) filed by the commissioners in that action divided the property into nine lots with all lot lines running parallel and canted to the right. On July 3, 1966, the court entered a judgment confirming the commissioners' division of the farm into the nine lots.

As the years passed, Ronald and Georgia Webb became the owners of Lots 1, 2, and 3. Harvey and Katie Newsome became the owners of Lot 4. The Webbs purchased Lot 3 in November 1969, sold it in October 1972, and purchased it again in April 1985. The Newsomes purchased Lot 4 in December 1967.

In April 1989, the Webbs filed an action in the Pike Circuit Court against the Newsomes concerning the location of the boundary line between Lots 3 and 4. In December 1990, the circuit court entered a judgment in favor of the Webbs. The effect of this judgment was to establish a line between Lots 3 and 4 that canted to the left, contrary to the plat of the commissioners in the 1965 circuit court action. As a result of this judgment, a portion of the Newsome home and their water well was within the area awarded to the Webbs.

In that 1989 suit between the Webbs and the Newsomes, the other lot owners sought to intervene on the ground that their boundary lines might be affected. There was never any ruling by the court on the motion to intervene; therefore, the other lot owners were never made parties to the suit. Finally, in January 1993, the court's judgment in favor of the Webbs was affirmed by this court in a 2–1 decision.

In December 1993, the Webbs filed an action in the Pike Circuit Court against James Michael Compton and Brenda Compton, two of the appellees herein. The Webbs claimed that the Compton home, located on Lot 6, was ten feet into their property. All other lot owners were ordered by the trial court to be joined as parties in the case. In his answer and counterclaim, Harvey Newsome[1] asked the court to enter such judgments and orders as would be necessary to correct or make consistent the previous judgments. Newsome also filed motions to vacate pursuant to CR[2] 60.02 in the 1965 action and in the 1989 action and requested consolidation of those cases with the latest case.

At trial, Phillip Potter, an engineer, testified on behalf of the Webbs as to the placement of the various boundary lines. His placement of the lines for Lots 1 through 9 allocated forty-seven percent of the total farm to the Webbs' Lot 1. Potter acknowledged that the commissioners likely did not intend this result. Luke Hatfield, an engineer, testified as to the boundary lines of the lots on behalf of the other lot owners. Hatfield placed the lines in such a way as to restore to Newsome all of Lot 4, including the water well which was drilled on the property in 1967 as well as the corner of the house. On December 21, 2000, the circuit court entered findings of fact, conclusions of law, and a judgment setting the boundary lines in accordance

---

1. Katie Newsome, his wife, was deceased by that time.

2. Kentucky Rules of Civil Procedure.

with Hatfield's testimony. This appeal by the Webbs followed.

■ The Webbs' first argument is that the doctrine of *res judicata* barred the trial court from redetermining the boundaries of Lots 1, 2, and 3 with Lot 4. They assert that Newsome was a party to the previous cases in the Pike Circuit Court and that he was collaterally estopped or otherwise barred from asserting any interest in this case and from presenting any evidence. The Webbs note that the doctrine of *res judicata* is applicable when there is identity of parties, identity of causes of action, and the first action is decided on the merits. *See Haeberle v. St. Paul Fire & Marine Ins. Co.*, Ky.App., 769 S.W.2d 64, 66 (1989). Thus, they assert that Newsome, who was a party to the 1989 action, is bound by the 1990 judgment determining the boundary lines between he and the Webbs.

■ In response, the appellees argue that the doctrine of *res judicata* is not applicable where CR 60.02 relief has been granted. They cite *Rosenbalm v. Commercial Bank of Middlesboro*, Ky.App., 838 S.W.2d 423 (1992). Therein, this court held that "once the judgment upon which a plea of *res judicata* is based is set aside, the issue is no longer a viable one." *Id.* at 430. We agree with the appellees. Once a judgment has been vacated or set aside, there is no judgment upon which the parties may be bound. Thus, the doctrine of *res judicata* is not applicable.

■ The Webbs' second argument is that the trial court erred in reaching its decision because it violated established rules of deed interpretation. They cite *Bevins v. West*, Ky., 242 S.W.2d 868 (1951), in support of their argument. In that case, the appellate court held that where there was a conflict between deed descriptions and a plat that was inconsistent with the deed descriptions, the court must follow the deeds in the absence of ambiguities therein. *Id.* at 869.

Continuing with their argument, the Webbs argue that the 1989 lawsuit was resolved based upon the deed descriptions and that the circuit court, which decided this case contrary to the original deed descriptions, therefore violated the doctrine of *stare decisis*. In this court's opinion affirming the 1989 judgment of the Pike Circuit Court, this court cited *Eversole v. Kentucky River Coal Corp.*, 298 Ky. 321, 182 S.W.2d 392 (1944), wherein the court stated that where property rights have been acquired in light of a prior opinion on the basis of similar deeds, under the doctrine of *stare decisis*, this court will construe the deed under consideration in the same manner that they construed the prior deeds. 298 Ky. at 323, 182 S.W.2d 392. Thus, since the circuit court did not interpret the deeds the same way in this action as it did in the 1989 action, the Webbs assert that the court erred by not following the doctrine of *stare decisis*.

■ We acknowledge the need for consistency in determining the boundary lines of these nine lots. However, the doctrine of *stare decisis* "is not inflexible, nor is it of such a nature as to require perpetuation of error or illogic." *D & W Auto Supply v. Dept. of Revenue*, Ky., 602 S.W.2d 420, 424 (1980). Further, the court in *National Electric Service Corp. v. District 50, United Mine Workers of America*, Ky., 279 S.W.2d 808 (1955), held that relief from a judgment may be granted pursuant to CR 60.02 if it would be inequitable to give it further prospective application. *Id.* at 812. *See* CR 60.02(e).

■ "Any action under this rule [CR 60.02] addresses itself to the sound discretion of the court and the exercise of that discretion will not be disturbed on appeal

except for an abuse." *Berry v. Cabinet for Families & Children,* Ky., 998 S.W.2d 464, 467 (1999). Further, CR 60.02 relief is available where a party has made a clear showing of extraordinary and compelling equities. *Dull v. George,* Ky.App., 982 S.W.2d 227, 229 (1998). Such a showing was made in this case.

 Finally, we find no error in the trial court's reliance on the testimony of Newsome's engineer rather than the Webbs' engineer. "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." CR 52.01. This rule is applicable to boundary disputes. *Croley v. Alsip,* Ky., 602 S.W.2d 418, 419 (1980). In *Howard v. Kingmont Oil Co.,* Ky.App., 729 S.W.2d 183 (1987), the court held that "[a] fact finder may choose between the conflicting opinions of surveyors so long as the opinion relied upon is not based upon erroneous assumptions or fails to take into account established factors." *Id.* at 184–85. In short, we conclude that the trial court neither erred in granting CR 60.02 relief nor in determining the boundary lines in the manner that it did.

The judgment of the Pike Circuit Court is affirmed.

ALL CONCUR.